**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.:  1:25-cv-20696**

PUROAST COFFEE COMPANY, INC.

      Plaintiff,

v.

TRADER JOE'S COMPANY,

      Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND**
**INCORPORATED MEMORANDUM OF LAW**

Defendant Trader Joe's Company ("Trader Joe's") moves to dismiss the Amended Complaint ("Amended Complaint") filed by Plaintiff Puroast Coffee Company, Inc. ("Puroast"), with prejudice, for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The Amended Complaint fails to fix the problems that resulted in the Court's dismissal of Puroast's initial complaint. As the Court noted at the hearing on the first motion to dismiss, the Lanham Act demands more than Puroast's subjective views. "[F]or a Lanham Act case, if we're talking about false, it can only be false if you tell me what the truth is, right?" *See* D.E. 41 (Oct. 30 Tr.) at 17:20-23. The Amended Complaint confirms again that the "truth" is based solely on Puroast's subjective beliefs and not tied to any legislative, regulatory, or industry standard.

***First***, rather than alleging new facts or law to address the Court's concerns, the Amended Complaint repackages the same strained theories that the Court flatly rejected. *See generally* Oct. 30 Tr. The Amended Complaint again alleges that Trader Joe's French Roast Low Acid coffee (the "Trader Joe's Product") is falsely labeled "low acid" because it has an average pH of 5.44, short of the contrived "critical pH line of 5.5 ***recommended*** by Dr. Salam Ibrahim," whose research was funded by Puroast. Am. Compl. ¶¶ 90, 91 (emphasis added). Puroast attempts to bolster this made-up standard by referring to irrelevant papers about sugar's role in developing dental cavities and dental erosion caused by acid reflux. But these new allegations only serve to confirm, as Puroast's counsel did at the motion to dismiss hearing, that there is no established standard for "low acid" coffee. Oct. 30 Tr. at 12:10. Critically, the Amended Complaint concedes that the Trader Joe's Product contains exactly what Trader Joe's sells—a coffee that is, in fact, "***less acidic than regular coffee***." Am. Compl. ¶ 91. Puroast has failed to plausibly allege falsity, and the Court should dismiss its "low acid" claim with prejudice for the same reasons as in the prior order. *See* Oct. 30 Tr. at 24:5-7.

***Second***, Puroast's separate claim that the Trader Joe's Product falsely advertises its caffeine content as "fully caffeinated" suffers from the same fatal defect—there is no false statement. Initially, the Amended Complaint is devoid of any allegation that the Trader Joe's Product's packaging mentions caffeine (it does not). This dooms Puroast's claim. *See Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186 (N.D. Cal. 2021) (rejecting claim that label was misleading where the "phrase does not appear on the product's label"). Here, Puroast cannot plausibly allege falsity because there is no legislative, regulatory, or industry standard setting a minimum caffeine content for coffee that is not labeled "decaffeinated"—which Trader Joe's Product is not. *See* Am. Compl. ¶ 87. Nor does Puroast allege specific facts stating what specific amount of caffeine reasonable consumers expect from coffee not labeled "decaffeinated." Indeed, the Amended Complaint does not identify a single manufacturer—not even Puroast—that provides a specific caffeine content disclosure on its products.[1] When it dismissed the original complaint, the Court asked, "So Trader Joe's French Roast low acid also happens to have less caffeine. But again, where is that standard?" Oct. 30 Tr. at 16:19-21. Puroast's response is unambiguous: there is none.

Puroast's citations to the U.S. Department of Agriculture's ("USDA") Food and Nutrient Database for Dietary Studies ("FNDDS") for the proposition that the government "recognizes" a standard for "regular caffeine" and "half caff" coffee are unavailing. Am. Compl. ¶¶ 6-36. First, Puroast does not allege that the FNDDS sets caffeine level or labeling requirements for coffee, nor can it, because the FNDDS is only a repository of survey data obtained by the USDA on what

---

[1] Puroast's admission that caffeine content varies dramatically based on roast, bean type, and processing highlights that reasonable consumers do not have a specific caffeine level expectation for coffee not labeled "decaffeinated." *See* Am. Compl. ¶ 8; *see, e.g.*, Oct. 30 Tr. at 27:4-13, 28:10-11. Caffeine content is also highly dependent on differences in manufacturers' brewing instructions and how individual cunsumers prepare their coffee.

Americans eat.[2] Moreover, although Puroast alleges that the Trader Joe's Product "has the caffeine characteristics of a half-caff coffee," Am. Compl. ¶ 87, it fails to specifically allege how much absolute caffeine is contained in the Trader Joe's Product to compare with the survey result, resorting instead to relative values that do not provide Trader Joe's with any actual notice of a purported violation. *See id.* ¶¶ 85-86. Failing again to specifically allege any deception, Puroast's Complaint should be dismissed.

*Third*, like the dismissed complaint, the Amended Complaint fails to establish with particularity the injury Puroast allegedly suffered. The Amended Complaint asserts without any factual basis that "consumers" at large abandoned the entire "low acid" coffee category because of Trader Joe's deceptive acts. Puroast's only allegation is a single consumer's idiosyncratic and vague understanding that "low acid" meant "'at least half if not less' of the acidity of regular coffee." *Id.* ¶ 103. Puroast's theory does not and cannot satisfy proximate causation, as it disregards the commercial reality that Trader Joe's customers could not have purchased Puroast as an alternative; Puroast is not sold by Trader Joe's (*see id.* ¶ 2) and the Trader Joe's Product is only sold by Trader Joe's (*see id.* ¶ 3). And tellingly, the Amended Complaint does not allege that any consumer expected the Trader Joe's Product to have a pH level of at least 5.5 or whether *any* consumer was aware that another "low acid" coffee met that "requirement" when they bought the Trader Joe's Product.

As this Court observed, the Lanham Act is neither a sword against legitimate competitive forces perceived by Puroast, nor a shield to protect Puroast from the realities of the market. *See*

---

[2] *See* U.S. Dep't of Agric., *FoodData Central FAQ,* https://fdc.nal.usda.gov/faq (last visited Dec. 3, 2025) ("Data in the [FNDDS] are updated every 2 years in conjunction with the biennial National Health and Nutrition Examination Survey (NHANES) What We Eat in America dietary data release.")

Oct. 30 Tr. at 24:19-24. Puroast seeks extraordinary relief—prohibiting Trader Joe's sale of the Trader Joe's Product with its current labeling and disgorgement of all profits—all predicated on its subjective view of what "low acid" coffee should be and how much caffeine it should have. Puroast's claims invite the absurd result that, should it prevail, Trader Joe's would be the only coffee retailer in the country subject to the arbitrary 5.5+ pH cut-off and nebulous "full caffeine" requirement for "low acid" coffee. Such an outcome should not be countenanced by the Court.

All of Puroast's claims fail as a matter of law, and no further amendment can cure them. The Court should dismiss these claims with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). A claim is "plausible on its face" only when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

False advertising claims grounded in fraud must also satisfy the heightened pleading standards of Rule 9(b). *See Epson Am., Inc. v. Safe Space Scan Tech. LLC*, No. 24-CV-80583, 2024 WL 4555880, at *3 (S.D. Fla. Sept. 13, 2024), *R & R adopted*, No. 24- CV-80583, 2024 WL 4554104 (S.D. Fla. Oct. 23, 2024). Fraud allegations require particularity, and "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare*, 428 F. 3d 1008, 1012 (11th Cir. 2005). A plaintiff "must actually plead the who, what, when, where, and how of specific misrepresentations that led them astray." *Lawrie v. Ginn Dev. Co.*, 656 Fed. App'x 464, 474 (11th Cir. 2016).

## ARGUMENT

Puroast has done nothing to cure the pleading deficiencies that led the Court to dismiss its claim for relief under the Lanham Act in the first instance. To state a false advertising claim under the Lanham Act, a plaintiff must allege that: (1) the defendant made statements that were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented product or service affects interstate commerce; and (5) the plaintiff has been, or likely will be, injured as a result of the false or misleading statement. *Johnson & Johnson Vision Care v. 1-800 Contacts*, 299 F.3d 1242, 1247 (11th Cir. 2002); *see also* 15 U.S.C. §1125.

Because no amendment could cure the Amended Complaint's deficiencies, it should be dismissed with prejudice.

## I.   PUROAST DOES NOT PLAUSIBLY ALLEGE THAT THE "LOW ACID" STATEMENT IS FALSE OR MISLEADING.

### A.   Puroast Cannot Demonstrate the "Low Acid" Statement is Literally False.

Puroast's Amended Complaint fails to allege that the "low acid" statement on Trader Joe's Product is literally false. Puroast claims that, because the Trader Joe's Product has a "mean" pH of 5.4, it is not low acid. Am. Compl. ¶ 90. This claim fails for several reasons. First, the Amended Complaint admits, based on Puroast's purported testing, that the Trader Joe's Product "is marginally *less acidic* than regular coffee." *Id.* ¶ 91 (emphasis added). Thus, by Puroast's own admission, the statement is literally true and cannot support a literal falsity claim. Further, as counsel for Puroast previously recognized, "low acid" has no established, commonly understood meaning in the coffee industry (or otherwise), *see* Oct. 30 Tr. at 12:10 ("[t]here is no standard, as the Court is aware. There is no standard for this"). There is no legal or factual support for a literal

falsity claim. *See, e.g., Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 529 (S.D.N.Y. 2009).

To salvage its claim, Puroast's Amended Complaint doubles down on the same arbitrary 5.5+ pH threshold "recommended" by an academic whose "study" Puroast funded, and supplements it with two irrelevant studies on tooth enamel erosion. *See* Am. Compl. ¶¶ 91-93. Puroast's reliance on these new sources only underscores that Puroast cannot establish falsity of the "low acid" statement. Adding an alternative definition for "low acid," the Amended Complaint now claims that a "low acid" label is also false if a coffee product's acid "has not been reduced below 50%." *Id*. ¶ 95. This standard, Puroast contends, is "a matter of language," and coffee whose caffeine is not reduced by 50% from an unspecified baseline pH amount "cannot truthfully be called 'low' in acidity because 50% is 'medium,' at best." *Id*. This alternative "standard" is based purely on Puroast's say-so, nothing more.

Finally, Puroast has not adequately pleaded falsity because it failed to again attach the testing it relies on for its claim. *See id*. ¶¶ 14-15. Puroast alleges that "testing of the Product…determined that, when prepared in accordance with the label's instructions, it has an average (mean) pH of 5.44." I*d*. ¶ 90. But, just as before, it has not attached the testing so that the Court and Trader Joe's can assess whether the methodology, laboratory, individual test results, or any other necessary details meet Rule 9(b)'s stringent pleading standards. Puroast's assertion that "[d]ocumentation of these tests has already been produced to Trader Joe's in discovery in this action[]" is meaningless for purposes of stating a claim under Rule 8, let alone with particularity under Rule 9(b). *Brownell v. Starbucks Coffee Co.*, 2023 WL 9053058, at *6 (N.D.N.Y. Nov. 30, 2023); *Epson*, 2024 WL 4555880, at *4 (vague and unsupported allegations of falsity based on undisclosed testing are insufficient to state a claim).

**B. Puroast Cannot Demonstrate the "Low Acid" Statement is Misleading.**

Puroast admits the Trader Joe's Product is "less acidic" than "regular coffee," therefore, the statement is literally true. Because Puroast cannot plausibly allege that "low acid" is misleading to a reasonable consumer, Count II fails. *See Johnson & Johnson,* 299 F.3d at 1247.

To allege deception, Puroast is required "to allege and introduce some evidence of consumer deception." *Wilco Trading LLC v. Shabat,* No. 8:20-CV-579-TPB-JSS, 2021 WL 1146634, at *5 (M.D. Fla. Mar. 8, 2021). In this regard, the Amended Complaint mirrors the original, offering no new allegations to show that a reasonable consumer has specific expectations about the acidic profile and content of low acid coffee. *See Greater Houston Transp. Co. v. Uber Techs.,* Inc., No. CIV.A. 4:14-0941, 2015 WL 1034254, at *13 (S.D. Tex. Mar. 10, 2015) (motion to dismiss granted, in part, because plaintiffs did not allege the consumer expectation created by the at-issue statement); *see also Wysong Corp. v. APN, Inc.,* 889 F.3d 267, 271 (6th Cir. 2018) ("given that some pet foods contain premium ingredients, the court is left to wonder how that fact impacts consumer expectations. Are these premium sellers even known to the Defendants' intended audience? Do their products compete with the Defendants', or do they cater to a niche market? Are there obvious ways consumers can distinguish between the Defendants' products and the fancier brands? [Plaintiff] does not say.").

Indeed, for the second time, Puroast failed to plausibly allege that reasonable consumers who purchase low acid coffee are even aware of, let alone make purchasing decisions based on, a specific pH value threshold or the processes by which coffee's acidic compounds are reduced. *Cosgrove v. Oregon Chai, Inc.,* 520 F. Supp. 3d 562, 582–83 (S.D.N.Y. 2021) (holding that plaintiff failed to allege the label was misleading because any allegation that consumers had a

"common understanding" of the ingredients in chai was absent from the complaint); *Eli Lilly & Co. v. Arla Foods Inc*., No. 17-C- 703, 2017 WL 4570547, at *8 (citing *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 729 (7th Cir. 1998)) ("actual confusion must refer to the confusion of reasonable and prudent consumers, and not confusion among sophisticated members of the industry at issue."); *Combe Inc. v. Dr. Aug. Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 466 (E.D. Va. 2019), *aff'd*, 851 F. App'x 357 (4th Cir. 2021) (citing 4 MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 23:100 (4th ed. 2014)) (for purposes of the Lanham Act, "the issue of likelihood of confusion will usually revolve around the less knowledgeable consumer").

But even accepting Puroast's unsupported conclusion as true—that a reasonable consumer requires a pH value over 5.5 (or less than 50% than "regular" coffee)—a consumer still would not be misled by Trader Joe's Product's label. It makes clear that "the beans are treated to a chemical-free, natural steaming process that removes *some* of their acidity, but not their flavor." Am. Compl. ¶ 23 (emphasis added); *see, e.g., Pernod Ricard USA, LLC v. Bacardi USA, Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) (advertisement was not misleading where potentially misleading impression created by one part of the label was dispelled by statements to the contrary elsewhere on the label).

In a futile attempt to bolster supposed deception, the Amended Complaint describes a lone consumer who allegedly relied on Trader Joe's "low acid" claim in purchasing the Trader Joe's Product and then suffered "acid-related symptoms" as a result. Am. Compl. ¶¶ 99-107. Critically, the Amended Complaint does not allege that this consumer had a specific pH in mind for either "low acid" coffee or "regular coffee" at the time she purchased Trader Joe's Product, only that she thought "low acid" "meant it would have 'at least half if not less of the acidity of regular coffee." *Id.* ¶ 103. Puroast's single example is insufficient to establish that a *reasonable* consumer would

share the same idiosyncratic interpretation. *See Wysong Corp.*, 889 F.3d at 271 (citing *Iqbal*, 556 U.S. at 678) ("[J]udicial experience and common sense" are our guides."); *Launch on Demand LLC v. United States*, No. 6:23-CV-789-CEM-RMN, 2024 WL 6069150, at *6 (M.D. Fla. Sept. 30, 2024) (even though plaintiff believed she must purchase Day-of-Launch services from the Space Force, the court held that "[c]onsidering the [webpage] as whole and taking its statements in context," it was not "plausible that a reasonable consumer would be misled to believe that"); *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) ("[T]he Court [must] apply its common sense when determining the plausibility of a claim – common sense dictates that no reasonable consumer could plausibly think [what plaintiff thought] when faced with overwhelming evidence to the contrary."). Indeed, the Amended Complaint reveals that the single consumer referenced is not representative of a reasonable consumer—she is a consumer who "had to stop drinking coffee due to health issues." Am. Compl. ¶ 99.

Because Puroast cannot allege the "low acid" statement is false or misleading, Count II should be dismissed with prejudice.

## II.   THE AMENDED COMPLAINT IDENTIFIES NO FALSE OR MISLEADING STATEMENT ABOUT CAFFEINE.

### A.  The Trader Joe's Product Makes No Representation About Caffeine.

To state a false advertising claim, Puroast must allege that the advertisement conveyed either a literally false, or literally true but misleading, statement. *Johnson & Johnson*, 299 F.3d at 1247. Because the Trader Joe's Product makes no representation about caffeine content, there is no express or implied statement capable of being false or misleading and Count I fails for this reason alone. *See, e.g., Gudgel*, 514 F. Supp. 3d at 1186.

Realizing that the Trader Joe's Product's label does not make any statement about caffeine,[3] Am. Compl. ¶ 83, Puroast attempts to salvage its claim by alleging that Trader Joe's misleads consumers regarding caffeine content "by necessary implication." *Id*. ¶ 128. According to Puroast, if a coffee product is not sold as "decaffeinated," then it must be "regular" and "fully caffeinated" coffee. *See id*. ¶¶ 128-29. Puroast's interpretation is not one that reasonable consumers share.

Courts consistently decline to assume that consumers will make unreasonable inferences in the absence of an affirmative representation. *See, e.g., Gudgel*, 514 F. Supp. 3d at 1187 (rejecting claim that label was misleading where the "phrase does not appear on the product's label"); *Weiss v. Trader Joe's Co.,* 2018 WL 6340758, at *5 (C.D. Cal. 2018), *aff'd*, 838 F. App'x 302 (9th Cir. 2021) (a "reasonable consumer would not assume things about a product other than what the statement actually says") (cleaned up); *Warren v. Whole Foods Mkt. Grp., Inc*., 574 F. Supp. 3d 102, 114 (E.D.N.Y. 2021) (holding that where "there are no representations that the oatmeal is 'sugar-free,' 'low in sugar,' 'without added sugar,' or anything similar… [a] reasonable consumer would not be tricked into believing that a product is sugar-free or low in sugar"); *Pichardo v. Only What You Need, Inc*., No. 20-CV-493, 2020 WL 6323775, at *2–6 (S.D.N.Y. Oct. 27,

---

[3] Puroast refers to a single purported email in which a Trader Joe's employee allegedly responded to an inquiry about the caffeine level in the Trader Joe's Product by stating: "[the Trader Joe's Product] is not decaffeinated. This coffee has the same amount of caffeine as a normal French roast, but it has been processed in a way that reduces the acidity level." Am. Compl. ¶ 111. Even if the Court were to credit Puroast's opinion as setting a caffeination standard, a single communication lacking any context as to the question posed by the consumer, or an allegation of a comparator product for a "normal French roast," the alleged communication still has no bearing on whether the Trader Joe's Product makes a false or misleading representation about caffeine. Separately, there is no allegation that any consumer purchasing the Trader Joe's Product has ever been or will ever be exposed to this or a similar email. *See generally Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1230 (M.D. Fla. 2017) ("the court may not, however, consider multiple advertisements in an advertising campaign as a whole, as that approach assumes that consumers will be exposed to each advertisement").

2020) (rejecting argument that a label was misleading because it did not disclose that the vanilla flavor was bolstered by other ingredients); *Werbel v. Pepsico, Inc.*, No. 09-CV-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) ("'[t]here are no representations that the Crunch Berries are derived from real fruit nor are there any depictions of any fruit on the cereal box.' Thus, 'no reasonable consumer would be deceived into believing that Cap'n Crunch has some nutritional value derived from fruit.'"); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc*., 962 F. Supp. 2d 514, 520 (S.D.N.Y. 2013) ("The consumer could very well view ['100% Pure Olive Oil'] as simply remaining silent as to whether that olive oil is virgin or refined").

Here, as the Court explained in dismissing the original complaint, consumers who do not see "decaffeinated" on a coffee product's label do not automatically assume or understand that it must have a specific level of caffeine. *See* Oct. 30 Tr. at 27:23-28:5; *see also id.* 28:22-23. The Amended Complaint does nothing to refute the Court's analysis. Indeed, the Amended Complaint acknowledges that, setting aside "decaffeinated" coffees, labeling that specifies caffeine content is rare. *See* Am. Compl. ¶¶ 10, 29. Puroast's own labels contain no caffeine level representations. *Id*. ¶ 70. Simply put, Puroast's allegations confirm that reasonable consumers do not read the absence of caffeine information on a label as implying anything about caffeine content.

Because the Trader Joe's Product makes no representation about caffeine content, there is no express or implied statement capable of being false or misleading and Count I fails.

**B.  Puroast Cannot Plead Literal Falsity Because No Objective Caffeine Standard Exists.**

Puroast's literal falsity theory also fails for the independent reason that there is no standard for "regular" caffeine, and therefore, there is no objective benchmark against which falsity can be measured. *See, e.g., Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 172 (3d Cir. 2001) (citing *Castrol Inc. v. Pennzoil Co.,* 799 F. Supp. 424, 436 (D.N.J. 1992), *aff'd,* 987 F.2d 939 (3d Cir. 1993)) ("In order to determine whether a claim is literally false, courts have looked to objective

11

industry standards rather than subjective standards of the party making the comparison."); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 915 F. Supp. 360, 365–66 (S.D. Fla. 1996) ("In making a threshold determination concerning the falsity of a challenged advertisement under the Lanham Act, examining the industry standard is appropriate."); *American Rockwool, Inc. v. Owens– Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1443 (E.D.N.C.1986) ("In the view of the court, [objective industry standards] must be used in order to find a violation of the Lanham Act."); *Stokely-Van Camp, Inc.,* 646 F. Supp. 2d at 529 (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir.2007)) ("[i]f the language ... is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false").

Because there is no objective standard, Puroast attempts to glean one by referring to collected USDA data for "traditional caffeine categories" such as regular coffee, decaf, and half-caff. Am. Compl. ¶¶ 11, 17, 22. But the USDA data provides summaries of surveys obtained from certain "sampling" conducted by the USDA; it does not set a standard for "regular caffeine," "decaffeinated," or "half caff" coffee—or any food. *See* U.S. Dep't of Agric., *FoodData Central FAQ*, https://fdc.nal.usda.gov/faq (last visited Nov. 26, 2025) ("FoodData Central" is an "integrated, research-focused data system that provides expanded data on nutrients and other food components…"). Simply put, the USDA does not issue standards or requirements for caffeine content or labeling thereof in coffee. Indeed, Puroast's reliance on the FNDDS survey of "half-caff" coffee is nonsensical and irrelevant because it pertains to "[c]offee, brewed, blend of regular and decaffeinated." Am. Compl., Ex. C. This has no application here as Puroast does not allege that the Trader Joe's Product is a *blend* of regular and decaffeinated coffee.

Even if the Court were to credit the FNDDS survey of "half caff" coffee as tending to establish a caffeine standard (which they do not), the Amended Complaint fails to meet Rule 8,

much less the requisite Rule 9(b) standard. Specifically, Trader Joe's still does not have "notice of the 'precise misconduct with which [it] is charged'" because, although the FNDDS survey describes an 8 fluid ounce portion of "half caff" as having an average of 48 milligrams of caffeine, the Amended Complaint does not allege the Trader Joe's Product's caffeine content in milligrams, making it impossible for Trader Joe's and the Court to compare the survey results to the Puroast's supposed standard. *Epson Am.,* 2024 WL 4555880, at *5; *see also Brownell,* 2023 WL 9053058, at *6 ("a vague reference to '[r]ecent reports based on laboratory analysis' without identifying those reports or results of that analysis are bare and conclusory assertions that, even if accepted as true, do [ ] not plausibly state a claim for relief as required under Rule 8 of the Federal Rules of Civil Procedure"). Instead of alleging the actual caffeine content of the Trader Joe's Product or any other comparator products (Am. Compl. ¶¶ 85-86) in milligrams (or some other precise unit of measurement), Puroast's literal falsity claim is based on relative percentages of caffeine reduction as compared to completely different products (e.g., "45% of the caffeine of Puroast House Blend"). *Id*. ¶ 85. And although Puroast claims to have produced "documentation of these tests . . . in discovery," *id*. ¶¶ 14-16, it fails to specifically identify such documents, much less explain how those documents show testing that is scientifically sound and that provides adequate notice of a purported violation—details that Puroast knows would be critical in the Court's assessment of the Amended Complaint's falsity claims under Rule 9(b)'s standard.

Because there is no established standard for "regular caffeine" or how much caffeine a low-acid coffee should have, Puroast cannot demonstrate the label is literally false.

### C.  Puroast has Failed to Plausibly Allege the Label is Misleading regarding Caffeine.

Given the Trader Joe's Product contains no literally false statement, to survive dismissal of Count I, Puroast must allege that the label is misleading to a reasonable consumer. *See Johnson & Johnson,* 299 F.3d at 1247. Puroast has not and cannot.

Puroast alleges that the Trader Joe's Product misleads consumers by failing to disclose its caffeine content. As is evident on the face of the Amended Complaint, neither Trader Joe's Product nor Puroast's Low-Acid Product has any disclosure relating to caffeine content. Am. Compl. ¶¶ 70-72, 83. Puroast's argument—that there is something special about low acid coffee that compels caffeine disclosure—has already been expressly rejected by this Court:

> MR LINES: But once you've treated it in a way that reduces the caffeination level, you have an obligation to disclose that.
>
> THE COURT: That's not true. I have never -- trust me, I buy a lot of coffee -- I have never gone to buy coffee and looked at 50 brands of coffee, I don't think I have ever seen a coffee bag that says: We're 80 percent caffeine. We're 70 percent caffeine. We're 60 percent caffeine. It's either caffeinated or decaf.

Oct. 30 Tr. at 27:23-28:5; *see also id.* at 28:22-23 ("[Y]ou don't buy coffee based on the levels of caffeination other than decaf and caf.").

Unsurprisingly, the Amended Complaint is devoid of any allegation that there is an industry or regulatory requirement to disclose caffeine levels of a non-decaffeinated coffee—there is none. Indeed, Puroast admits it is, in fact, *uncommon* for any coffee product to list caffeine content. Am. Compl. ¶¶ 10, 29. Puroast once again fails to explain how much caffeine reasonable consumers expect in coffee that is not labeled "decaffeinated." Taken to its logical conclusion, Puroast's lawsuit asks the Court to assume that consumers have some heightened expectation of the Trader Joe's Product than they do for every other coffee on the market. In this regard, "[the Court] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."

*See Impact Applications, Inc. v. Concussion Mgmt., LLC*, No. GJH-19-3108, 2021 WL 978823, at *6 (D. Md. Mar. 16, 2021) (citing *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)); *see also, e.g., Warren v. Coca-Cola Co*., 670 F. Supp. 3d 72, 81 (S.D.N.Y. 2023) (Plaintiff's arguments that use of the word "margarita" and "hard" on the label implied tequila content "reflect[ed] a strained reading that is inconsistent with the Product's labeling and with common sense.").

The case of *Cosgrove v. Oregon Chai, Inc*., 520 F. Supp. 3d 562, 582–83 (S.D.N.Y. 2021), is instructive. There, the plaintiffs argued that, because the chai drink mix, which was labeled as a "vanilla" chai mix, did not disclose the product contained more cinnamon than vanilla, the label was misleading under New York General Business Law's false advertising provision. The court disagreed because "Plaintiffs [did] not allege, nor [was] the Court aware of a common understanding of the ingredients in chai" and therefore, they could not have been misled by the quantity of vanilla in the product, even though it was not disclosed. Similarly, Puroast has not alleged that consumers have a "common understanding" of caffeine content in low acid coffee, nor could it. Thus, consumers cannot be misled by the amount of caffeine given that, as the Amended Complaint concedes, the Trader Joe's Product has caffeine and is not decaffeinated. Am. Compl. ¶ 87. This ends the analysis.

In a futile attempt to demonstrate deception, Puroast alleges a 400-person study, which purportedly showed "82.5% of the relevant population (the consuming public of Trader Joe's products, either in-store or on-line in the past 12 months, as well as those that have purchased and consumed caffeinated coffee) believed that, based on its labelling, [the Trader Joe's Product] would have the same level of caffeine as regular coffee.…" *Id*. ¶ 96. As a threshold matter, Puroast "cannot rely solely on consumer surveys to state a claim." *La Barbera v. Ole Mexican Foods Inc*.,

No. EDCV 20-2324 JGB (SPX), 2023 WL 4162348, at *20 (C.D. Cal. May 18, 2023), *appeal dismissed sub nom. LaBarbera v. Ole Mexican Foods, Inc.,* No. 23-55550, 2023 WL 11823366 (9th Cir. Sept. 27, 2023) (dismissing false advertising claim under California law because the plaintiff's allegations of consumer deception were implausible despite the Plaintiff's survey). Further, as discussed above, courts have consistently declined to assume unreasonable inferences in the absence of an affirmative representation on a product's label. *See supra* II (A).

Again, Rule 9(b) requires more of Puroast's pleading. The Amended Complaint offers no details about the survey to assess whether it was proper. It does not describe the survey methodology, the questions posed, the caffeine levels attributed by the survey to "regular coffee" versus Trader Joe's Product, or any materials shown to participants. *See* Am. Compl. ¶¶ 96-98. As district courts around the country have held, "a barebones or inadequately conducted survey will not be sufficient to establish a plausible reasonable consumer allegation." *Culver v. Unilever United States, Inc.,* No. CV 19-9263-GW-RAOX, 2021 WL 10382839, at *13 (C.D. Cal. Jan. 21, 2021); *see, e.g., Clark v. Westbrae Natural, Inc.,* No. 20-cv-03221-JSC, 2020 WL 7043879, at *3 (N.D. Cal. Dec. 1, 2020) ("Plaintiff's barebones allegation regarding the results of a 2020 survey which allegedly showed that 69.5% of 400 consumers believed that [the representation at issue connoted the plaintiff's argued meaning] does not push Plaintiff's reasonable consumer allegation over the plausibility line."); *Eshelby v. L'Oreal USA, Inc.,* 664 F. Supp. 3d 417, 426 (S.D.N.Y. 2023) ("More importantly, the defects in Eshelby's survey cannot salvage her claims. The survey only showed respondents the front of the product[.]").

Further highlighting the still conclusory nature of Puroast's Amended Complaint, Puroast fails to allege what caffeine content survey participants expected in "regular coffee." *See* Am. Compl. ¶¶ 96-99. Without explaining that baseline expectation, it is entirely possible that the

16

caffeine content in the Trader Joe's Product met the survey participants' expectations of whatever they believed to be "the same level as regular coffee." *Bd.-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556, 561 (2d Cir. 2018) ("The Complaint offers no non-conclusory allegations or facts to support the claim that consumers have been misled or confused.")

Puroast's citations to the FoodData Central reports for brewed coffee, half-caff coffee, and decaf coffee (Am. Compl. ¶¶ 11,17, 22) fare no better to bolster its claims of deception. Even assuming that such surveys are designed to show consumers' expectations of caffeine values (they are not), the Amended Complaint does not allege any plausible connection between those beverages and consumers' expectations of *low acid* coffee. *N. Am. Olive Oil Ass'n*, 962 F. Supp. 2d at 519 (holding that plaintiff's preliminary injunction claim did not demonstrate a likelihood of success on the merits because "[the plaintiff] present[ed] no extrinsic evidence that the perceptions of ordinary consumers align with these various labeling standards such that they would understand a product labeled '100% Pure Olive Oil' to contain a blend of refined and virgin olive oil").

Puroast has not, and cannot, demonstrate that the Trader Joe's Product's label—which makes no representation about caffeine and for which disclosure of caffeine is not required or expected—is false or misleading. Count I should be dismissed with prejudice.

### III.    PUROAST AGAIN FAILED TO SPECIFICALLY ALLEGE INJURY.

Even if Puroast could plausibly allege a false or misleading statement, both counts still fail because Puroast cannot demonstrate the Trader Joe's Product has proximately caused any injury to Puroast. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("[I]n all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause."). The Amended Complaint asserts a dubious theory of injury: that consumers who had a negative

experience with Trader Joe's Product abandoned the entire low-acid category and therefore declined to purchase Puroast's products.

As a threshold matter, without facts tying Trader Joe's advertising to any harm to *Puroast*, this alleged "market-wide" injury theory is insufficient to establish proximate cause necessary for Lanham Act injury. *See, e.g., Vampire Fam. Brands, LLC v. MPL Brands, Inc*., No. CV 20-9482-DMG (ASX), 2021 WL 4134841, at *7 (C.D. Cal. Aug. 6, 2021) (quoting *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV 18-04189-PHX (JATx), 2019 WL 3840988, at *7 (D. Ariz. Aug. 15, 2019)) ("[U]nder the Lanham Act, 'general harm' to the market, including deception of consumers, 'is an insufficient basis to support a finding of a commercial injury to Plaintiff.'"); *see also Skydive Arizona, Inc. v. Quattrochi*, No. CV 05–2656–PHX–MHM, 2006 WL 2460595, at *10 (D. Ariz. Aug. 22, 2006) (finding that the plaintiff could not assert a claim based on damage to the skydiving industry as a whole).

Puroast's only illustration of its purported injury is a single consumer who allegedly tried the Trader Joe's Product and then dismissed the entire low-acid category entirely. Am. Compl. ¶ 115. However, Puroast alleges that this lone consumer has severe gastrointestinal issues that make coffee consumption unsafe, but who nevertheless "decided to try [Trader Joe's Product] to see if she could safely consume it." *Id*. ¶¶ 99-100. These allegations do not strengthen the tenuous causal link in the initial complaint that the Court found insufficient. *See* Oct. 30 Tr. at 21:1-6. Although this consumer apparently realized her health issues still prevent her from consuming coffee, the Amended Complaint fails to explain how one consumer's reading of the Trader Joe's Product's label as connoting "full" caffeine content can be reasonably tied and extrapolated to the experience, expectation, and conclusion of a significant number of consumers.

Furthermore, the Amended Complaint fails to dispense of certain intervening factors which destroy proximate cause. For example, the Amended Complaint ignores that Trader Joe's customers—motivated by convenience, brand loyalty, or cost-effectiveness—may never have purchased Puroast's product regardless of the challenged advertising. *See, e.g., ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020) (dismissal was warranted where the plaintiff failed to allege any facts to link defendant's actions to the plaintiff's harm beyond the fact that they competed because any number of intervening reasons could account for plaintiff's injury (new market entrants, reduction of consumer's discretionary income, etc.)); *Wysong Corp.*, 889 F.3d at 272 ("In sum ... *context matters.* Both the relevant market and the products' labeling are crucial in evaluating plausibility....") (emphasis in original).

This omission is critical to the viability of Puroast's claims because the Lanham Act requires Puroast to plausibly allege that the at-issue advertising was not only the "but for" reason consumers did not purchase its product, but also the proximate cause of that decision. *Warren Tech., Inc. v. UL LLC*, No. 1:18-CV-21019-UU, 2018 WL 10550930, at *10 (S.D. Fla. Oct. 31, 2018), *aff'd*, 962 F.3d 1324 (11th Cir. 2020); *Alfasigma USA, Inc. v. First Databank, Inc.*, No. 18-CV-06924-HSG, 2022 WL 899848, at *9 (N.D. Cal. Mar. 28, 2022) ("Plaintiff has not alleged the kind of direct relationship between [the advertising] and Plaintiff's sales that could rule out 'any number of reasons' why Plaintiff may have lost sales.")

Finally, nowhere in the Amended Complaint does Puroast allege a shred of factual support to make its claim of "diverted sales" plausible. *See* Am. Compl. ¶¶ 116-117. There is still not a single allegation to support that Puroast's sales have actually declined or been affected in any way by the Trader Joe's Product. *See, e.g., Beaulieu Grp., LLC v. Mohawk Indus., Inc*., No. 4:15-CV-

0124-HLM, 2015 WL 11722814, at *5 (N.D. Ga. Oct. 26, 2015) (ruling plaintiff failed to state a false advertising claim where allegations of harm and causal connection between harm and false statements were conclusory); *ThermoLife Int'l LLC*, 2019 WL 3840988, at *7 ("Plaintiff [] does not allege any facts to show that [its sales] decreased, when the decrease occurred, where sales were diverted to, or how it correlated with Defendant's false advertising.").

## CONCLUSION

The Lanham Act is not the proper vehicle for Puroast's marketing campaign. Its Amended Complaint does nothing to fix the defective theories contained in its original pleading. Rather, it confirms that Puroast's claims rest on invented, self-serving "standards" and unreasonable inferences that bear no relationship to reasonable consumers' expectations or industry practice. Trader Joe's label is neither false nor misleading. Because it is clear that any further amendment would be futile, Trader Joe's respectfully requests that the Court dismiss the Amended Complaint with prejudice.

Dated:  December 5, 2025                     Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Telephone: (305) 350-7220
Facsimile: (305) 351-2147

By: */s/ Melissa C. Pallett-Vasquez*
Melissa C. Pallett-Vasquez, Esq.
Florida Bar No. 715816
mpallett@bilzin.com
Lori Lustrin, Esq.
Florida Bar No. 59228
llustrin@bilzin.com
Megan Barney, Esq.
Florida Bar No. 1049480
mbarney@bilzin.com
stapanes@bilzin.com

asolis@bilzin.com
eservice@bilzin.com
mdepara@bilzin.com

*Counsel for Trader Joe's Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record who are registered with the Court's EM/ECF system.

By:     */s/ Melissa C. Pallett-Vasquez*
Melissa C. Pallett-Vasquez, Esq.