**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:25-cv-20696-JB**

PUROAST COFFEE COMPANY, INC.,

Plaintiff,

v.

TRADER JOE'S COMPANY,

Defendant.
______________________________________/

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**

**THIS CAUSE** comes before the Court upon Defendant Trader Joe's Company's ("Defendant" or "Trader Joe's") Motion to Dismiss Amended Complaint (the "Motion"). ECF No. [42]. Plaintiff Puroast Coffee Company, Inc. ("Plaintiff" or "Puroast") filed a Response in Opposition, and Trader Joe's filed a Reply. ECF Nos. [47], [48]. On July 10, 2026, the Court held oral argument on the Motion. ECF No. [57]. Upon careful consideration of the parties' written submissions, argument of counsel, the pertinent portions of the record, and the relevant authorities, for the reasons explained below, the Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff is a Florida corporation that specializes in the production and sale of low-acid coffee. ECF No. [38] ¶¶ 2, 41. Plaintiff developed its own "proprietary roasting methodologies that render coffees that are low in acidity" but "without impacting the caffeine content and without any additives or fillers." *Id.* ¶¶ 42–46. Plaintiff's low-acid coffees are sold nationwide on Amazon and at grocery retailers,

including Publix, Kroger, and Ralphs, as well as at the coffee shop it operates in this District. *Id.* ¶ 2. Among the various low-acid coffees sold is Plaintiff's "Dark French Roast," which is available as regular, decaffeinated ("decaf"), or half-caffeinated ("half-caff") coffee. *Id.* ¶¶ 68–72. According to Plaintiff, its low-acid coffee is a "good choice for consumers who are health conscious or who suffer [from] conditions and sensitivities," such as "acid reflux, [irritable bowel syndrome], or other digestive concerns." *Id.* ¶¶ 48–49. Plaintiff alleges that it has spent more than $14 million since 2008 developing a market for low-acid coffee as a "functional food" with significant health benefits. *Id.* ¶ 57. Plaintiff further alleges that while its "advertising and marketing efforts expand and grow the awareness of and market for low-acid coffee as a functional food, it is harmed by competitors who attempt to pass off their products as functional foods within the emerging low-acid coffee market when those foods do not provide the promised benefits" which results in consumers being "turned off" to "the entire emerging category of low-acid coffee as a functional food." *Id.* ¶¶ 62–63.

Defendant is a California corporation operating Trader Joe's grocery retail stores, which sell, among other products, its own "Dark French Roast Low Acid" coffee (the "Trader Joe's Product").[1] ECF No. [38] ¶¶ 3, 83. The front label of the product

[1] Plaintiff alleges that Defendant "operates an online store selling its products on a nationwide basis, sells the [Trader Joe's Product] product nationwide on Amazon, and operates at least eight (8) retail stores selling the [Trader Joe's Product] within this District." *Id.* ¶ 3. However, it appears that Defendant only sells its products in its brick-and-mortar stores—not online. General FAQs, *Trader Joe's*, https://www.traderjoes.com/home/FAQ/general-faqs. While its products may appear on third-party websites such as Amazon, those are unauthorized product listings by third-party sellers. *Id.*

bears a large red circle with the words, "Low Acid," and the back label includes the following statement: "Prior to a long, slow roast, the beans are treated to a chemical-free, natural steaming process that removes some of their acidity, but not their flavor." *Id.* ¶ 89. The product makes no statement about its caffeine content, nor is it marked "decaf" or "half-calf." *Id.* ¶¶ 84, 88.

On February 14, 2025, Plaintiff filed suit against Defendant alleging false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). ECF No. [1]. On April 2, 2025, Defendant moved to dismiss the initial complaint. ECF No. [16]. Following full briefing and oral argument, the Court granted Defendant's motion and dismissed Plaintiff's claims without prejudice and with leave to amend. *Id.*; ECF Nos. [18], [19], [37], [41].

Plaintiff thereafter filed an amended complaint (the "Amended Complaint"), again alleging false advertising in violation of Section 43(a) of the Lanham Act. ECF No. [38]. In the Amended Complaint, Plaintiff alleges that the Trader Joe's Product is falsely or misleadingly advertised as "regular, low acid coffee." *Id.* ¶ 1.

Specifically, in Count One (the "Caffeine Claim"), Plaintiff alleges that the Trader Joe's Product is falsely sold as regular, fully caffeinated coffee. *Id.* ¶¶ 125–142. According to the Amended Complaint, the U.S. coffee market contains "three traditional categories" of coffee: (1) "regular" coffee, "coffee that is brewed from beans that have not undergone decaffeination[,]" (2) "decaf" coffee, "coffee that has gone through a decaffeination process to remove 97% of the caffeine[,]" and (3) "half-caff" coffee, a blend of regular coffee and decaf coffee, consisting of 50% of each, unless

otherwise labelled." *Id.* ¶¶ 6, 7, 14, 20. Because the Trader Joe's Product bears no half-caff designation, Plaintiff alleges that it is "by necessary implication being sold as part of the category of regular, fully caffeinated coffee," which is "literally false" or, at minimum, misleading to consumers. *Id.* ¶¶ 128–130.

Plaintiff relies on testing performed by Cambium Analytica in September and December 2024, which purportedly reveal that the Trader Joe's Product has 51% of the caffeine of Trader Joe's regular Dark French Roast, 45% of the caffeine of Puroast's House Blend, and less caffeine than the Folgers and Puroast half-caff products, such that it "has the caffeine characteristics of a half-caff coffee not a regular coffee." *Id.* ¶¶ 85–87. Plaintiff also relies on a consumer survey that it commissioned. *See id.* ¶¶ 96–98. Plaintiff claims that the survey demonstrates that, based on the product's labeling, 82.5% of respondents believed that the Trader Joe's Product "would have the same level of caffeine as regular coffee," and that after learning the product "contains less than half the caffeine of regular caffeinated coffee," 71.5% of respondents "would purchase less of it" and 63.6% "would not buy it at all." *Id.* ¶¶ 96–97. Plaintiff further alleges that on October 21, 2025, a Trader Joe's customer service representative responded to a consumer inquiry by stating that the Trader Joe's Product "is not decaffeinated" and "has the same amount of caffeine as a normal French roast, but it has been processed in a way that reduces the acidity level." *Id.* ¶ 111.

In Count Two (the "Low-Acid Claim"), Plaintiff alleges that the acidity of the Trader Joe's Product "cannot truthfully be described as 'low.'" *Id.* ¶¶ 143–59.

Plaintiff relies on testing conducted in February 2025, which allegedly determined that, when prepared in accordance with the label's instructions, the Trader Joe's Product has an average pH of 5.44, which makes it "marginally less acidic than regular coffee" but more acidic than "a critical pH line of 5.5 recommended by Dr. Salam Ibrahim," whose research Plaintiff funded. *Id.* ¶¶ 90–91. The Amended Complaint also cites dental literature describing 5.5 as "the critical pH" below which acids can dissolve tooth enamel, and states that, "as a matter of language," a coffee whose acidity has not been reduced by at least 50% "cannot truthfully be called 'low' in acidity because 50% is 'medium,' at best." *Id.* ¶¶ 92–95.

Plaintiff further alleges that the mislabeling diverts sales from their product. *Id.* ¶¶ 116–17, 133, 150. For the Caffeine Claim, Plaintiff alleges that the mislabeling diverts sales by creating "a false equivalency" between its Dark French Roast Low Acid Coffee, "which is fully caffeinated," and the Trader Joe's Product, "which is actually a half-caff." *Id.* ¶ 116. For the Low-Acid Claim, Plaintiff likewise alleges that the mislabeling diverts sales by creating a false equivalency between its Dark French Roast Low Acid Coffee, "which is low acid" with a pH above 5.5 and "less than half the acidity of regular coffee", and the Trader Joe's Product, "which is not low acid" with a pH below 5.5 and "not less than half the acidity of regular coffee." *Id.* ¶ 117. Plaintiff further alleges that the mislabeling is "damaging the market by destroying consumer confidence in the low-acid coffee as a functional food category" on which Plaintiff depends. *Id.* ¶¶ 119, 133–134, 150–151. As evidence of actual consumer confusion, Plaintiff points to a single consumer, Ms. Christina Joubert, "a

life-long Trader Joe's customer who had to stop drinking coffee due to health issues," but tried the Trader Joe's Product "to see if she could safely consume it." *Id.* ¶¶ 99–101. Plaintiff alleges that Ms. Joubert "thought [the Trader Joe's Product] would have the same caffeine as regular coffee" and "'at least half if not less' of the acidity of regular coffee." *Id.* ¶¶ 102–103. Plaintiff further alleges that Ms. Joubert's acid-related symptoms returned when she started drinking the Trader Joe's Product, and her experience "was so traumatic to her that she decided not to try any other low acid coffees and has been lost to the market for low acid coffee as a functional food." *Id.* ¶¶ 102–107.

## II. THE INSTANT MOTION

Defendant moves to dismiss the Amended Complaint. ECF No. [42]. At the outset of the Motion, Defendant states that the Amended Complaint fails to remedy the issues that resulted in the Court's dismissal of Plaintiff's initial complaint. *Id.* at 2. More specifically, Defendant contends that a statement cannot be "false" in the absence of an objective benchmark against which its truth can be measured, and the Amended Complaint—like the initial complaint—identifies no legislative, regulatory, or industry standard supplying one and instead relies on Plaintiff's own subjective views. *Id.*

As to the Caffeine Claim, Defendant argues that (i) its label makes no representation about caffeine whatsoever and thus there is no statement capable of being false or misleading; (ii) Plaintiff cannot plead literal falsity because there is no legislative, regulatory, or industry standard setting a minimum caffeine content for

"regular" or fully caffeinated coffee, and (iii) Plaintiff fails to allege that the Trader Joe's Product's label is misleading because reasonable consumers do not read the absence of a caffeine disclosure as a representation of "full" caffeination. *Id.* at 9–17. As to the Low-Acid Claim, Defendant argues that the "low acid" statement cannot be literally false or misleading because the Amended Complaint itself alleges that the product "is marginally less acidic than regular coffee," and that Plaintiff's 5.5 pH benchmark is a self-generated standard drawn from a Plaintiff-funded study and inapposite dental literature. *Id.* at 5–9. Lastly, Defendant argues that both claims fail independently because Plaintiff has not plausibly alleged an injury proximately caused by the challenged labeling in part because the parties' products are not sold in the same stores. *Id.* at 17–19.

Plaintiff responds that it has plausibly alleged that the Trader Joe's Product is false or misleading as to its caffeine content and to its "low acid" statement. ECF No. [47] at 6–20. As to the Caffeine Claim, Plaintiff argues that the label is false "by necessary implication." *Id.* at 7–8. More specifically, Plaintiff contends that the absence of a "decaf" or "half-caff" label necessarily implies regular, fully caffeinated coffee, which the Trader Joe's Product is not. *Id.* at 7–9. In support of this argument, Plaintiff relies on testing performed on the Trader Joe's Product, which found that it "contained only 51% of the caffeine of Trader Joe's Dark French Roast coffee and 17.8% less caffeine than Folger's half-caff brand." *Id.* at 10–11. Plaintiff further argues in the alternative that the Trader Joe's Product is misleading as to its caffeine content, relying on its allegations of a consumer survey "that reveals that a huge

majority of respondents (82.5%) believed that, based on its labelling, [the Trader Joe's Product] would have the same level of caffeine as regular coffee and that had they known the truth that would not buy it at all. *Id.* at 14–15. Plaintiff also argues that it has "alleged facts that, taken as true, show actual consumer confusion" namely, that "a specific consumer was misled and deceived into buying the coffee believing that it was fully caffeinated based on the label." *Id.* at 15.

As to the Low-Acid Claim, Plaintiff argues that the "Low Acid" label on the Trader Joe's Product is false because, according to Plaintiff, "low acid" means that it exceeds a "5.5 pH threshold" and it is "more than 50% less acidic than regular coffee." *Id.* at 4–5. Plaintiff asserts that testing "reveal[ed] that the [Trader Joe's Product's] acidity has not been reduced by at least 50%" and as a matter of English, the coffee cannot truthfully be described as anything less than "medium" in its acidity level. *Id.* at 16. Plaintiff also argues that, in the alterative, the "Low Acid" label on the Trader Joe's Product is misleading, relying on its allegations of "actual confusion by a consumer who needed her coffee to be low in acidity for health reasons. She testified that she found the coffee while shopping and, based on the label, "thought that the acidity would be 'low' and that meant it would have at least half if not less of the acidity of regular coffee." *Id.* at 19. Finally, Plaintiff argues that it has "sufficiently alleged that Trader Joe's sale of the falsely labeled coffee is diverting its sales by creating a false equivalency between [Plaintiff]'s regular, low-acid coffee and Trader Joe's half-caff, 'low-acid' coffee that has been mislabeled as being regular coffee." *Id.* at 20. In support of this argument, Plaintiff asserts that the Trader Joe's Product "is

also destroying consumer confidence in 'low-acid' coffees as a functional food" and that Plaintiff "wholly depends on that market and spent significant time and money developing it…." *Id.* at 21.

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a) ("A pleading that state a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief.").[2] Although the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, it is "not bound to accept as true a legal conclusion couched as a factual allegation," nor obligated to make unreasonable inferences. *Id.*

## IV. ANALYSIS

To state a claim of false advertising under Section 43(a) of the Lanham Act, a plaintiff must allege that "(1) the advertisements of the opposing party were false or

---

[2] The parties dispute whether Rule 9(b)'s heightened pleading standard applies to Lanham Act false advertising claims, an issue on which district courts in this Circuit are split. *See Altor Locks, LLC v. Proven Indus., Inc.*, No. 22-cv-00597, 2022 WL 17987073, at *3 (M.D. Fla. Oct. 18, 2022) (collecting cases). Regardless, the Court need not resolve that question because, as explained below, Plaintiff's allegations are insufficient to survive even Rule 8's ordinary plausibility standard.

misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce;[3] and (5) the [plaintiff] has been, or is likely to be, injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)); *see also Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005).

As to the first element, a plaintiff must show that the statements at issue were either (i) "commercial claims that are literally false as a factual matter," or (ii) "claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (quoting *Hickson*, 357 F.3d at 1261).

"[O]nce a court deems an advertisement to be literally false, the movant need not present evidence of" the second element, "consumer deception." *1-800 Contacts*, 299 F.3d at 1247 (citing *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999)). "On the other hand, a plaintiff attempting to establish the second kind of false advertisement, one that is literally true but misleading, must present evidence of deception in the form

[3] Plaintiff has alleged, ECF No. [38] ¶¶ 4, 132, 149, and Defendant does not dispute, *see generally* ECF No. [42], [48], that the Trader Joe's Product affects interstate commerce.

of consumer surveys, market research, expert testimony, or other similar evidence to satisfy its burden." *N. Tr. Corp. v. Carl Domino, Inc.*, No. 05-cv-80678, 2006 WL 8433639, at *6 (S.D. Fla. Mar. 13, 2006), *report and recommendation adopted*, 2006 WL 8433658 (S.D. Fla. Apr. 14, 2006).

Turning to the third element, a plaintiff "must establish materiality even when a court finds that a defendant's advertisement is literally false." *Id.* A plaintiff may establish the materiality requirement by proving that "the defendants misrepresented an inherent quality or characteristic of the product." *1-800 Contacts,* 299 F.3d at 1250 (quoting *National Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2nd Cir. 1997)).

As to the final element, "a plaintiff must show that it has been—or is likely to be—injured as a result of the false advertising in question." *Carl Domino, Inc.*, 2006 WL 8433639, at *6 (citing *1-800 Contacts,* 299 F.3d at 1247). "Proof of injury can come in the form of direct diversion of sales from a plaintiff to defendant or a loss of good will associated with the product." *Id.* (citing *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 915 F. Supp. 360, 365-66 (S.D. Fla. 1996) (defining injury to the plaintiff as a result of the false or misleading advertisements "by causally related declining sales or loss of goodwill")).

**A. Count One: The Caffeine Claim**

Because the Trader Joe's Product makes *no* affirmative statement regarding caffeine, Plaintiff has not alleged sufficient facts from which this Court can find that the label on the Trader Joe's Product is literally false or materially misleading as to

its caffeine content. Nevertheless, Plaintiff argues that it is falsely or misleadingly labeled as "regular, fully caffeinated coffee." *See* ECF No. [47] at 5–13. On falsity, Plaintiff pleads the Caffeine Claim as one of literal falsity by necessary implication. ECF No. [38] ¶¶ 128–129. According to Plaintiff, because the product bears no decaf or half-caff designation, consumers by necessary implication believe it to be a regular fully caffeinated coffee which is "literally false." *Id.* This theory fails for two independent reasons.

First, the label contains no statement from which a caffeine claim can be necessarily implied. A statement may be literally false either explicitly, on its face, or by necessary implication. *Carl Domino, Inc.*, 2006 WL 8433639, at *18 n.19 (citing *Clorox Co. P.R. v. Procter & Gamble Com. Co.*, 228 F.3d 24, 35 (1st Cir. 2000)). "A literally false 'claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Id.* (quoting *Clorox Co. P.R.*, 228 F.3d at 35). In deciding whether a consumer would readily recognize an unstated claim, the Court "must determine whether the false message will necessarily and unavoidably be received by the consumer." *Id.* (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 588 (3d Cir. 2002)).

Where, by contrast, the challenged quality is not stated on the label at all, courts, albeit not from this Circuit, have refused to find falsity. *See Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1186–87 (N.D. Cal. 2021) (no actionable claim where the label "contains no representation" about the quality at issue); *Ebner v. Fresh, Inc.*,

838 F.3d 958, 966 (9th Cir. 2016) (concluding that without "any statement or other depiction anywhere on the package about lip product accessibility," there was no actionable omission about the inaccessibility of the product); *see also Weiss v. Trader Joe's Co.*, No. 18-cv-01130, 2018 WL 6340758, at *5 (C.D. Cal. Nov. 20, 2018) (a "reasonable consumer would not assume things about a product other than what the statement actually says" (alterations adopted)), *aff'd*, 838 F. App'x 302 (9th Cir. 2021); *Smith v. Trader Joe's Co.*, No. 26-cv-04335, 2026 WL 2646989, at *5 (C.D. Cal. Sept. 8, 2026) (slip copy) (explaining that "no statement on the [Trader Joe]'s Product's label promises a specific amount of caffeine or purports to guarantee that the Product's caffeine content will not fall below the range Plaintiffs identify [for 'regular' coffee]"). Taken together, the doctrine asks what a defendant's statements implicitly say; but it does not treat a defendant's silence as a statement.

Here, the asserted implication arises not from any statement Defendant made but from the absence of one. Plaintiff's Amended Complaint concedes that the label makes no representation about caffeine content. ECF No. [38] ¶¶ 83, 88. The label does not say "regular," "fully caffeinated"—or *anything* else about caffeine. The only reference to the product's processing states that "the beans are treated to a chemical-free, natural steaming process that removes some of their acidity, but not their flavor." *Id.* ¶ 89. Indeed, Plaintiff fails to point to any affirmative representation on the label from which full caffeination could be implied.

That failure alone defeats the literal falsity theory with regard to caffeine. In fact, every case Plaintiff cites in support of its necessary implication theory involves

such an affirmative representation: a product named "Doubleshot Espresso" that allegedly contained less than two shots of espresso; a detergent named "Ace con Blanqueador" ("Ace with bleach") that contained no bleach; an advertisement promising pregnancy test results "In As Fast As Ten Minutes" when the test took as much as thirty; and a device advertised as embodying NASA technology that did not. *Naimi v. Starbucks Corp.,* 798 F. App'x 67, 69 (9th Cir. 2019); *Clorox Co. P.R. v. Procter & Gamble Com. Co.*, 228 F.3d 24, 34–35 (1st Cir. 2000); *Tambrands, Inc. v. Warner-Lambert Co.,* 673 F. Supp. 1190, 1193–94 (S.D.N.Y. 1987); *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1225–26 (11th Cir. 2008). Therefore, Plaintiff's claim is not one of falsity by necessary implication; it is a claim—albeit an unsupported one—that Defendant had a duty to disclose the Trader Joe's Product's caffeine content. However, the Lanham Act imposes no such affirmative duty of disclosure: "a failure to inform consumers of something, even something that they should know, is not per se a misrepresentation actionable under section 43(a)." *International Paint Co. v. Grow Group, Inc.,* 648 F. Supp. 729, 731 (S.D.N.Y. 1986); *see also McNeilab, Inc. v. Am. Home Prods. Corp.*, 501 F. Supp. 517, 532 (S.D.N.Y. 1980). Absent any statement about caffeine, there is no statement capable of being literally false, and Plaintiff's necessary implication theory fails.

Second, even if the absence of a "decaf" or "half-caff" label could constitute a representation that the coffee is "regular, fully caffeinated coffee," that message could not be literally false because there is no objective benchmark against which its truth can be measured. Something can only be false measured against what is true.

Consistent with this principle, "in order to determine whether a claim is literally false, courts … look[] to objective industry standards rather than subjective standards of the party making the comparison." *Castrol Inc. v. Pennzoil Co.*, 799 F. Supp. 424, 436 (D.N.J. 1992); *see also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 366 (S.D. Fla. 1996) (explaining that, "[i]n making a threshold determination concerning the falsity of a challenged advertisement under the Lanham Act, examining the industry standard is appropriate").

Plaintiff's attempt to supply this objective standard or "truth" through federal food labeling law is unavailing. Plaintiff identifies no legislative, regulatory, or industry standard establishing a minimum caffeine content for coffee not labeled "decaf" or "half-caff." *See generally* ECF No. [38]. Further, the Amended Complaint itself alleges that there are only three recognized categories for coffee: decaf, half-caff, and regular. *Id.* ¶ 8. According to Plaintiff, "[r]egular coffee … consists of coffee that is brewed from beans that have not undergone decaffeination[,]" "[d]ecaf coffee is coffee that has gone through a decaffeination process to remove 97% of the caffeine[,]" and "[h]alf-caff coffee is a blend of regular coffee and decaf coffee, consisting of 50% of each, unless otherwise labelled." *Id.* ¶¶ 7, 14, 20. The Court accepts as true Plaintiff's test results showing that the Trader Joe's Product contains roughly half the caffeine of certain comparator coffees. *See Hi-Tech Pharmaceuticals, Inc. v. HBS International Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018) (holding that allegations of a product's chemical composition are factual assertions entitled to the presumption of truth). But even accepting the caffeine content as pleaded, Plaintiff does not allege

that the Trader Joe's Product underwent "a decaffeination process to remove 97% of the caffeine" nor that it "is a blend of regular coffee and decaf coffee." *See* ECF No. [38] ¶¶ 14, 20. Thus, there remains no possibility of falsity; if the product is not decaf or half-caff, it is by default regular caffeinated coffee.

Plaintiff's alternative theory—that the label, even if not literally false, is misleading—rests on the same premise of silence, namely that the absence of a caffeine disclosure misleads consumers to believe the product is fully caffeinated. *See, e.g.,* ECF No. [58] at 21:15–18 (arguing that "if you have a coffee that you're selling that has been decaffeinated, you label it as such; and if it's not labeled as such, it's not been decaffeinated"); *id.* at 24:17–20 (arguing that "if you sell a coffee and it doesn't say it's been decaffeinated, … there is an implied representation that you haven't done anything to the coffee to reduce the caffeination levels"). This argument suffers from the same defects identified in the literal falsity analysis above.

A statement that is not literally false is actionable only if it "implicitly convey[s] a false impression, [is] misleading in context, or [is] likely to deceive consumers." *Hi-Tech*, 910 F.3d at 1196 (quoting *Hickson*, 357 F.3d at 1261). A plaintiff proceeding on a "literally true but misleading" theory must ultimately present evidence of consumer deception, such as consumer surveys, market research, or expert testimony. *Hickson*, 357 F.3d at 1261. While that evidentiary burden does not exist at the pleading stage, deception must still be plausibly alleged. *See Alphamed*, 391 F. Supp. 2d at 1165.

It has not been plausibly alleged that consumers are deceived by unlabeled coffee, because the Amended Complaint identifies neither a misleading statement nor a common consumer expectation as to a coffee's caffeine content. In *Cosgrove v. Oregon Chai, Inc.*, for example, a "vanilla" chai mix that contained more cinnamon than vanilla was found not to be misleading because the plaintiffs failed to allege that consumers shared any "common understanding" of what the product consists of. 520 F. Supp. 3d 562, 582–83 (S.D.N.Y. 2021). Here, Plaintiff similarly fails to allege a common understanding among reasonable consumers of what caffeine level a coffee not labeled "decaf" or "half-caff" should contain—particularly given its own allegations that caffeine content varies by roast, bean variety, and brew method. ECF No. [38] ¶ 8 ("Regular coffee has between 85 and 120mg of caffeine per 8-ounce cup depending on roast, bean variety and brew method."); *see also Smith*, 2026 WL 2646989, at *5 ("If caffeine levels 'generally' span a 35 milligram range based on common variables that Plaintiffs identify, it is not surprising—and thus not deceptive—that some coffee will also fall above or below that range.").

Plaintiff attempts to fill this gap with the national survey it commissioned, alleging that the survey shows that 82.5% of the 400 respondents believed, "based on its labelling," that the Trader Joe's Product "would have the same level of caffeine as regular coffee." ECF No. [38] ¶ 96. But the survey does not establish a common understanding. It is directed at consumer belief rather than at any statement the label made: that respondents assumed the coffee was fully caffeinated shows, at most, a belief they brought to the label, not a false message the label conveyed. And because

the survey never states what caffeine level respondents attributed to "regular coffee," even credited in full, it establishes only that consumers held some unstated assumption—not a shared understanding of an objective caffeine content against which the label's silence could mislead. Further, as Defendant points out, "[t]he Amended Complaint offers no details about the survey to assess whether it was proper" such as "the survey methodology, the questions posed, the caffeine levels attributed by the survey to 'regular coffee' versus Trader Joe's Product, or any materials shown to participants." ECF No. [42] at 17. Plaintiff's barebones allegation that 82.5% of the 400 its survey respondents believed, "based on its labelling," that the Trader Joe's Product "would have the same level of caffeine as regular coffee," ECF No. [38] ¶ 96, "does not push Plaintiff's reasonable consumer allegation over the plausibility line." *Clark v. Westbrae Nat., Inc.*, No. 20-cv-03221, 2020 WL 7043879, at *3 (N.D. Cal. Dec. 1, 2020) (finding the that the plaintiff's "barebones allegation regarding the results of a 2020 survey which allegedly showed that 69.5% of 400 consumers believed that 'the "Vanilla" representation on the Product meant that the Product's flavor comes exclusively from the vanilla bean'" was insufficient to allege consumer deception in support its false advertising claims). In any event, a plaintiff "cannot rely solely on consumer surveys to state a claim." *La Barbera v. Olé Mexican Foods Inc.*, 2023 WL 4162348, at *20 (C.D. Cal. May 18, 2023); *Eshelby v. L'Oreal USA, Inc.*, 664 F. Supp. 3d 417, 426 (S.D.N.Y. 2023) (determining that "leave to amend [the] complaint to add additional allegations about the results of this survey

… would be futile" because "[a] plaintiff cannot rely solely on consumer surveys to state a claim").

The remaining allegations in the Amended Complaint are no better. The allegation that Ms. Joubert believed that the Trader Joe's Product "would have the same caffeine as regular coffee" is insufficient to demonstrate consumer deception. *See* ECF No. [38] ¶ 102. A single consumer cannot establish a common understanding among reasonable consumers. *Khasin v. R. C. Bigelow, Inc.*, No. 12-cv-02204, 2016 WL 4502500, at *4 (N.D. Cal. Aug. 29, 2016), *aff'd sub nom. Victor v. R.C. Bigelow, Inc.*, 708 F. App'x 333 (9th Cir. 2017) (finding that the plaintiff failed to allege consumer deception and noting that, "regardless of whether [the individual]'s testimony suggests that he was misled, individual testimony is insufficient to establish that a reasonable consumer is likely to be misled") (citing *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (N.D. Cal. 1997) ("[A]necdotal evidence alone is insufficient to prove that the public is likely to be misled.")).

And the alleged October 21, 2025, customer service email is a single response to a single consumer inquiry; it is not the product's label or advertising, and there is no allegation that consumers at large will be exposed to it. *Id.* ¶ 111. Because Plaintiff has not plausibly alleged a misleading statement or a common consumer expectation the label's silence could betray, the misleading theory fails. In sum, the Court finds that the Trader Joe's Product is neither false nor misleading as to its caffeine content. Accordingly, Plaintiff has failed state a claim of false advertising with respect to the Caffeine Claim.

### B. Count Two: The Low-Acid Claim

Plaintiff next argues that the Trader Joe's Product is falsely or misleadingly labeled as having "low acid" because it has a pH below 5.5 and "not less than half the acidity of regular coffee." ECF No. [38] ¶¶ 117, 143–59. For the reasons below, Plaintiff has not alleged sufficient facts to support its claim that the "Low Acid" label on the Trader Joe's Product is literally false or materially misleading.

Beginning with falsity, the Trader Joe's Product is not literally false because "low acid" is a relative, qualitative term open to more than one reasonable reading, and Plaintiff's own pleading concedes the statement is true. *Id.* ¶ 91. In the Eleventh Circuit, an advertisement "cannot be literally false" if it is "susceptible to more than one reasonable interpretation." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308–09 (11th Cir. 2010) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 158 (2d Cir. 2007)). As a statement's "meaning … becomes less clear ... and it becomes susceptible to multiple meanings, the statement is more likely to be merely misleading" than literally false. *Id.* at 1308. Accordingly, the Eleventh Circuit has declined to find literal falsity where a non-deceptive reading of the claim is reasonable, even when a deceptive reading is also possible. *See Fla. Virtual Sch. v. K12, Inc.*, No. 24-10449, 2026 WL 127063, at *6 (11th Cir. Jan. 15, 2026) (holding that a comparison checklist was not literally false because, although one reading suggested that competitors lacked the listed features, another reasonable reading merely invited "consumers to do their own research").

Here, "low acid" is open to more than one reasonable interpretation. Plaintiff concedes the Trader Joe's Product is "marginally less acidic than regular coffee," ECF No. [38] ¶ 91, and "low" means less than ordinary. *See Low*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/low (defining "low" as "of lesser degree, size, or amount than average or ordinary") (last visited Sep. 21, 2026). A reasonable consumer could readily read "Low Acid" to mean exactly what Plaintiff concedes is true: a coffee less acidic than ordinary coffee. Because that reading is at least as reasonable as Plaintiff's reading, discussed below, the statement is "susceptible to more than one reasonable interpretation" and cannot be literally false. *See Osmose*, 612 F.3d at 1308–09.

Attempting to demonstrate falsity, Plaintiff supplies a definition of its own making. Specifically, Plaintiff reads "Low Acid" to mean that the acidity must be reduced by at least 50%, or a pH above 5.5. *See* ECF Nos. [38] ¶¶ 90–95, 117; [47] at 16. However, as with the Caffeine Claim, falsity must be measured against industry standards. *Castrol*, 799 F. Supp. at 436; *Tire Kingdom*, 915 F. Supp. at 365–66. A plaintiff cannot manufacture literal falsity either by seizing on one strained reading of an ambiguous term or by supplying its own standard against which the claim is judged. The Amended Complaint's new sources do not rehabilitate its theory. The "critical pH line of 5.5" is drawn from research Plaintiff itself funded, and the dental literature Plaintiff cites addresses the pH at which acids dissolve tooth enamel. ECF No. [38] ¶¶ 91–93. These sources say nothing about how coffee must be labeled or what consumers understand "low acid" coffee to mean. ECF No. [38] ¶¶ 91–93.

Plaintiff relies on the Supreme Court's decision in *POM Wonderful LLC v. Coca-Cola Co.* to demonstrate falsity despite the absence of any established standard for what "low" means in connection with coffee acidity. ECF No. [47] at 17–18 (citing *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 119 (2014). Plaintiff's reliance on *POM Wonderful* is misplaced. There, the Court held that food and beverage labels regulated by the Federal Food, Drug, and Cosmetic Act are not precluded from Lanham Act challenges. *POM Wonderful*, 573 U.S. at 119–21. Nothing in *POM Wonderful* suggests that this Court is required to adopt Plaintiff's self-generated standard. *See id.* Nor does the decision relieve a plaintiff of its burden to plausibly allege falsity, which Plaintiff has failed to do here. *See id.*

Turning to Plaintiff's second theory, Plaintiff has likewise failed to plausibly allege that the "low acid" statement is misleading. As the Court explained when analyzing the Caffeine Claim, a statement that is not literally false is actionable only if it is misleading in context or likely to deceive consumers. *Hi-Tech*, 910 F.3d at 1196 (quoting *Hickson*, 357 F.3d at 1261). While a plaintiff need not present evidence of consumer deception at the pleading stage, deception must still be plausibly alleged, *Alphamed*, 391 F. Supp. 2d at 1165, including some common understanding among reasonable consumers of the term at issue, *Cosgrove*, 520 F. Supp. 3d at 582–83. Plaintiff's allegations again fall short. Unlike the Caffeine Claim, Plaintiff does not put forward any survey to support the Low-Acid Claim. Indeed, the survey, as pleaded, only addressed caffeine. ECF No. [38] ¶¶ 96–98. This leaves only Ms. Joubert's allegation that she understood "low" to mean "at least half if not less" of the

acidity of regular coffee. *Id.* ¶ 103. As explained, however, a single consumer's interpretation does not plausibly allege a common understanding among reasonable consumers. *Khasin*, 2016 WL 4502500, at *4.

Further, the disclosure on the back label of the Trader Joe's Product that the process "removes some of their acidity" reinforces, rather than dispels, a truthful message. *See Smith*, 2026 WL 2646989, at *4 (concluding that "the use of the term 'Low Acid' on the [the Trader Joe's] Product's packaging is not deceptive as a matter of law and explaining, "[T]he Product's back label dispels any interpretation that the Product promises a specific pH or specific reduction in acidity. … Because the label states only that 'some' acid has been reduced, a reasonable consumer could not reasonably infer a specific level of acid reduction."). Thus, Plaintiff's misleading theory fails. In short, the "Low Acid" label on the Trader Joe's Product is neither false nor misleading, and as such, Plaintiff has failed to state a claim of false advertising with respect to the Low Acid Claim.

### C. Plausible Injury as to Both Counts

Both counts fail for the additional, independent reason that the Amended Complaint does not plausibly allege that Plaintiff suffered an injury proximately caused by the challenged labeling. Under the Lanham Act, a plaintiff must allege "an injury to a commercial interest in reputation or sales," and that injury must be "proximately caused" by the defendant's misrepresentations. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132–33 (2014). That is, the plaintiff must show "economic or reputational injury flowing directly from the deception

wrought by the defendant's advertising[.]" *Id.* Conclusory allegations of harm and causation are insufficient to state a false advertising claim. *See Beaulieu Grp., LLC v. Mohawk Indus.*, 2015 WL 11722814, at *5 (N.D. Ga. Oct. 26, 2015) (finding that plaintiff failed to state a false advertising claim where allegations of harm and causal connection between harm and false statements were conclusory).

Here, Plaintiff's diverted-sales allegations are wholly conclusory. The Amended Complaint asserts that the alleged mislabeling "creates a false equivalency ... resulting in diverted sales," but pleads no facts showing that its sales declined, when, where, or in what amount, or that any consumer purchased the Trader Joe's Product instead of the Puroast product because of the challenged label. ECF No. [38] ¶¶ 116–117. Nor does the Amended Complaint address any intervening factors—such as brand loyalty, price, and convenience—that would independently explain any given purchase. *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. 19-cv-01715, 2020 WL 248164, at *9–10 (D. Ariz. Jan. 16, 2020) (dismissing Lanham Act false advertising claim for failure to allege proximately caused injury where there were "[n]o factual allegations support the inference that a consumer buying Defendant's purportedly falsely advertised products would have otherwise bought [the plaintiff's products] *but for* Defendant's false advertising" and noting that "there could be any number of intervening reasons for why Plaintiff's sales decreased, including new market entrants" (emphasis in original)).

Plaintiff's remaining theory, that Trader Joe's is "damaging the market by destroying consumer confidence in low-acid coffee as a functional food category," ECF

No. [38] ¶ 119, is precisely the sort of general market harm that the Lanham Act does not allow. *See ThermoLife Int'l LLC*, 2019 WL 3840988, at *7 (explaining that "general harm" to the market, "including deception of consumers, is an insufficient basis to support a finding of a commercial injury to Plaintiff"); *Skydive Arizona, Inc. v. Quattrochi*, No. 05-cv-2656, 2006 WL 2460595, at *10 (D. Ariz. Aug. 22, 2006) (rejecting the plaintiff's "claim for damages [under the Lanham Act] based upon damage to the skydiving industry overall resulting from [the defendant]'s alleged actions" and explaining that "[w]hile the lessening of goodwill associated with a plaintiff's product is sufficient to support a claim for false advertising, the alleged loss of goodwill must be based upon loss of goodwill *to the plaintiff's product*" (emphasis added) (citation omitted)). Plaintiff's reliance on *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.* to support its general market harm theory is misplaced. *See* ECF No. [47] at 21 (citing *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013)). The portion of the opinion quoted by Plaintiff—that mislabeling "may cause consumers to lose faith in olive oil products in general" and that such harms are "quintessentially irreparable"—comes from that court's irreparable-harm analysis on a motion for a preliminary injunction, which asks whether money damages would be an adequate remedy, not whether the plaintiff has pleaded that it suffered an injury proximately caused by the defendant's advertising. *Kangadis Food Inc.*, 962 F. Supp. 2d at 518–19. The *Kangadis* court went on to deny the motion for preliminary injunction for failure to show a likelihood of success on the merits without ever reaching the sufficiency of the plaintiff's injury. *Id.* at 519–21.

Moreover, the lone consumer Plaintiff identifies is not a diverted sale: by Plaintiff's own allegations, Ms. Joubert had stopped drinking coffee entirely for health reasons, tried the Trader Joe's Product only "to see if she could safely consume it," and, after her symptoms returned, left the coffee market altogether. *Id.* ¶¶ 99–107. Nothing in the Amended Complaint suggests she would have purchased Puroast coffee had the Trader Joe's label read differently. Because Plaintiff has not plausibly alleged an injury proximately caused by the challenged statements, both counts fail for this reason as well.

**D. Amendment**

Finally, the Court considers whether Plaintiff should be provided a second opportunity to amend. A plaintiff is generally "given at least one chance to amend a complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "After a plaintiff's first opportunity to amend, leave for additional amendments may be denied because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.'" *In Re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, 2021 WL 2865869, at *23 (S.D. Fla. July 8, 2021) (citing *Andrx Pharms., Inc. v. Elan Corp.*, PLC, 421 F.3d 1227, 1236 (11th Cir. 2005)).

Denying leave to amend is proper when amendment would be futile. *See, e.g., Christman v. Walsh*, 416 F. App'x 841, 844 (11th Cir. 2011) ("A district court may

deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (holding that a district court may deny leave to amend when amendment would be futile). In addition, "[a] district court is not required to grant a plaintiff leave to amend [its] complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("reject[ing] the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend").

Here, an amendment would be futile and dismissal with prejudice is warranted. *See Duro Beam, LLC v. Manning*, No. 24-cv-81550, 2025 WL 2416413 (S.D. Fla. Aug. 21, 2025) (denying leave to amend after determining that leave to amend would be futile), *report and recommendation adopted*, 2025 WL 2576706 (S.D. Fla. Sep. 5, 2025); *see also Smith*, 2026 WL 2646989, at *4 (dismissing complaint with prejudice because "pleading additional factual allegations will not save Plaintiffs' claims because all of Plaintiffs' claims arise out of an unreasonable interpretation of one part of the [Trader Joe's] Product's label" (citing *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) (finding that "the labels at issue are not deceptive" and because "the labels themselves cannot be changed by a new complaint, any amendment would be futile")). Plaintiff has now had two opportunities to plead

its claims, the second with the benefit of the Court's detailed comments during the hearing on the motion to dismiss the initial complaint. *See* ECF Nos. [1], [36], [38], [41]. Notwithstanding, no amendment can supply an affirmative representation about caffeine content that the label does not contain, an objective standard for "low acid" or "regular" coffee that does not exist, or a reasonable consumer's common understanding as to both. In addition, both claims would fail due to the lack of any proximately caused injury. Finally, Plaintiff has not requested leave to amend, further justifying dismissal with prejudice. *A&A Wealth Mgmt., LLC v. Sec'y of Hous. & Urb. Dev.*, No. 24-cv-61033, 2025 WL 947638, at *4 (S.D. Fla. Mar. 28, 2025) (dismissing amended complaint with prejudice where the plaintiff "did not seek leave to amend" and it did "not appear that the deficiencies in the Amended Complaint [were] curable").

## V. CONCLUSION

For the reasons explained above, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. [42], is **GRANTED**. The Amended Complaint, ECF No. [38], is **DISMISSED WITH PREJUDICE**. The Clerk of Court is directed to **CLOSE** this case. Any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of September 2026.

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**